IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | Criminal No. 1:CR-03-00360 |
| v. | : | |
| | : | (Chief Judge Kane) |
| SYLVESTER MARTIN, | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

Before the Court is Defendant Sylvester Martin's "evidence presented for extension of time in which to file a response to a order to file a rule 15.A amended and supplemental pleading." (Doc. No. 297.) Although the title indicates that the filing is a motion for extension of time to file supplemental pleadings to his § 2255 motion pending before the court, pages three through fifty-three of the motion appear to be the actual supplemental facts and pleadings Martin proposes to file.[1] The filing itself is undated, but was received by the Court a week after Martin's extended deadline to file supplemental claims.[2] Given that Martin is a *pro se* litigant dependent

---

[1] Further confusing the issue of how to characterize Martin's filing, Martin also refers to the motion as a proceeding under "Rule 60." (Doc. No. 297 at 3, 5.) Because Rule 60(b) of the Federal Rules of Civil Procedure can only be used to attain relief from a civil judgment or order, and the § 2255 motion has not yet been ruled upon in this case, Martin does not appear to have a basis for relief pursuant to Rule 60(b). United States v. O'Keefe, 169 F.3d 281, 289 (5th Cir. 1999) ("Federal Rule of Civil Procedure 60(b), therefore, simply does not provide for relief from a judgment in a criminal case."); United States v. Mosavi, 138 F.3d 1365, 1366 (11th Cir. 1998) ("Rule 60(b) simply does not provide for relief from judgment in a criminal case, and as such the defendant cannot challenge the criminal forfeitures at issue under [Federal Rule of Civil Procedure] 60(b)."); 12 James W. Moore et al., Moore's Federal Practice § 60.02 (3d ed. 2009) ("Rule 60(b) relief is available only in civil cases.").

[2] On February 19, 2010, Martin moved for an extension of time to file amended and supplemental pleadings to his § 2255 motion. (Doc. No. 295.) On February 24, 2010, the Court granted Martin's motion, allowing him until March 26, 2010, to supplement his motion. (Doc. No. 296.)

1

upon the prison mail system for filing, the Court will interpret the filing as a *nunc pro tunc* motion for extension of time to file the attached supplemental pleading and will accept the pleading as timely filed. See United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999) (liberally construing pleadings and filing of *pro se* litigants). In this memorandum, the Court will consider only whether Martin's proposed supplemental claims properly relate back to the initial motion and may be considered on the merits. A merits analysis of the claims will follow in a future memorandum concerning the entirety of Martin's § 2255 motion.

**I.       Standard of Review**

Section 2255 motions may be amended or supplemented pursuant to Rule 15 of the Federal Rules of Civil Procedure, however, AEDPA limits amendments that occur after the one-year statute of limitations. Only those amendments which relate back to or clarify the grounds for relief asserted in the initial petition may be raised. Hodge v. United States, 554 F.3d 372, 378 (3d Cir. 2009) (finding that claims may be added provided they "arise from the same conduct, transaction, or occurrence described in a timely filed 2255 motion"); United States v. Thomas, 221 F.3d 430, 435-36 (3d Cir. 2000) (Federal Rule of Civil Procedure 15(a) applies to habeas proceedings). Additionally, the Court is obligated to read the supplemental claims and assure itself it does not "plainly appear . . . that the petitioner is not entitled to relief" prior to requiring the Government to respond. Thomas, 221 F.3d at 437 (applying Rules Governing § 2255 proceedings to supplemental claims).

**II.      Analysis**

    **A.      Conspiracy During State Court Proceedings**

In the supplemental filing, Martin expends the first twenty-five pages detailing the

conspiracy allegedly propogated against him by his defense attorneys, Judges Cherry and Hoover of the Court of Common Pleas of Dauphin County, and the district attorney prosecuting his case. (Doc. No. 225 at 4-27.) The facts alleged in this section relate to the same conspiracy Martin alleges in his initial § 2255 motion and appear to serve only to clarify the conspiracy alleged,[3] thus they relate back to Martin's initial pleadings. The majority of the new facts and allegations pertain to errors in his state court proceedings, which were *nol prossed* prior to commencement of the federal case for which he is now incarcerated. Though the Court will consider the additional factual allegations, the newly-pled facts do not support an additional basis for relief under § 2255 and need not be served on the Government for additional response. See Fed. R. § 2255 Proceedings 4(b). The Court will address the overall merits of the conspiracy argument in a forthcoming memorandum on Martin's § 2255 motion.

### B. Faulty Indictment, Vindictive Prosecution, and Statute of Limitations Violations

Next, Martin argues that Assistant United States Attorney Kimberly Kelly violated his rights when she held sealed grand jury proceedings and issued an indictment against him after the conclusion of his state court proceedings. He also claims that the federal prosecution violated

---

[3]Though clearly an attempt to clarify and provide additional details as to the conspiracy against him, the majority of Martin's statements are confusing, if not incoherent. The Court is, however, able to discern the basic thrust of Martin's complaint: Defense Attorney Kristin Weisenberger, who represented Martin during the state criminal proceedings, did not file the motions Martin requested of her and moved for a mistrial without his authorization. She later began working for the Dauphin County Prosecutor's office with Kimberly Kelly who was cross-designated as Assistant United States Attorney in the Middle District and eventually brought the federal charges against Martin. Judge Cherry violated his due process rights by finding him in contempt of Court and ordering a mistrial when he was seen in handcuffs by the jury, rather than simply giving a cautionary instruction. All the delays in the trial were an attempt to violate Martin's Double Jeopardy and Due Process rights and to aid the Government by giving it more time to build its weak case and allowing it to bring charges against him in federal court.

his rights because it was barred by the statute of limitations and was the result of vindictive prosecution. As with the prior section, the Court finds that the new allegations Martin raises relate back to his initial motion but do not raise a new basis for relief and thus need not be served on the Government.

In Martin's initial motion, he raises the statute of limitations issue in Ground One. (Doc. No. 286 at 4.) He also argues that the indictment violated his constitutional rights because it was issued under seal without his knowledge, it was the result of vindictive prosecution by Attorney Kelly, and it violated the Double Jeopardy Clause. (Doc. No. 286 at 7, 8, 11.) All of these grounds are proposed bases for relief in Martin's initial motion, thus they are legitimate bases for amendment under Hodge and Thomas, and the Court will consider the amendments. Nonetheless, because Martin only reiterates or expounds upon the allegations he already made, the Court finds that a new response from the Government is not required.

### C. Competency to Represent Himself at Trial

Martin's supplemental pleading also alleges the new claim that the Court erred in allowing him to proceed to trial *pro se* because he was incompetent to represent himself. This claim differs from the claim made on direct appeal and in the initial motion because Martin alleges for the first time in this motion that his incompetence prevented him from capably waiving his right to counsel.

Before turning to the merits of such a contention, the Court must determine whether this new claim may be raised in a supplemental pleading. As stated, a new claim must "arise from the same conduct, transaction, or occurrence described in a timely filed 2255 motion." Hodge, 554 F.3d at 378. Put otherwise, the new claim must be "tied to a common core of operative facts" of

4

a claim alleged in the initial motion. Id. (quoting Mayle v. Felix, 545 U.S. 644, 664 (2005)).

In his initial motion, Martin's second ground of relief is that he "was force [sic] to proceed to trial por-se [sic]." (Doc. No. 286 at 5.) Thus, the initial motion raises the issue of Martin's waiver of his Sixth Amendment right to counsel. The Court's assessment that Martin waived his right to counsel is certainly tied to his competency to make such a waiver, despite the fact Martin did not discuss his competency in the initial motion. Both claims deal directly with Martin's waiver of counsel, and therefore, the Court finds that they arise from the same transaction or occurrence.

Such a finding does not end the matter, however, as the Court still has an obligation to determine whether "it plainly appears . . . that the petitioner is not entitled to relief" prior to serving the amended pleadings on the Government. Fed. R. § 2255 Proceedings 4. After reviewing the docket, including the mental health examination ordered by the Court for Martin prior to the determination that he would proceed to trial and could represent himself, it appears that he plainly is not entitled to relief.

First, Martin's psychiatric evaluation unequivocally found that Martin was competent to stand trial and to represent himself. The evaluation states:

> Although Mr. Martin has run 'afoul' of the court proceedings, in terms of his understanding of the way he has been treated and the way he has been an outspoken advocate for his point of view, there is no indication that Mr. Martin has any psychiatrically disabling disorder which would prevent him from understanding the charges against him and conducting himself appropriately during legal proceedings. Mr. Martin also possesses the presence of mind and the ability to process information that would allow him to conduct his own defense. Whether this is advisable and whether he has the legal knowledge to do this is something, of course, that we cannot evaluate.
> Therefore, it is my professional opinion that Mr. Martin is

> competent, able to understand the processes that he will be involved in within the court, and able to be a functioning defendant in the trial process. It is also my assessment that aside from the question that whether he is possessed of the appropriate information, he is psychiatrically capable to conduct his own defense.

This review unflinchingly conveys the medical opinion that Martin was competent to stand trial and to conduct his own defense, thus the Court had no reason to conduct a competency hearing pursuant to 18 U.S.C. § 4241. (Doc. No. 154.) Moreover, the unambiguous nature of the report and Martin's strenuous objections to having had to undergo a psychiatric evaluation gave the Court no reason to inquire further into the matter. (Doc. Nos. 103, 112, 141, 147 at 8); see also Hummel v. Rosemeyer, 564 F.3d 290, 300 (3d Cir. 2009) (considering whether the psychiatric evaluations "presented such an unqualified affirmation of [the defendant's] competency to stand trial" so as to allow an attorney not to inquire further in an ineffective assistance of counsel claim).

Even in his supplemental pleading, Martin provides no support for his proposition that he was mentally incompetent to represent himself. He does not assert any background mental health issues, put forward any contradicting documentation of a mental health disorder, or even suggest any family history of such a disorder. The only medical support he points to is the medical evaluation required by this Court which, as set forth above, unequivocally advises that Martin is competent. Instead, Martin argues that his incompetency should have been discerned by "his illrational [sic] behaviors, his demenor [sic] at trial and consistent exhibits of bizarre statements that were set forth in various irrational paranoid beliefs concerning the laws . . . ." (Doc. No. 297 at 37.) He also suggests, without elaboration, that he "displayed signs that he suffered from bipolar II disorder, chronic-post traumatic stress disorder, and narcissistic personality disorder."

(Doc. No. 297 at 36.) Yet, symptoms of mental illness alone simply cannot support his contention that he was incompetent to represent himself when the Court noticed symptoms, a psychiatric evaluation was ordered against Defendant's wishes, and he was found wholly competent.

Last, the Court notes that the Third Circuit Court of Appeals affirmed the Court's decision to grant Martin's renewed request to proceed *pro se*. (Doc. No. 279-2.) Given that the law of this circuit requires a trial court to "assure itself that the defendant is competent to stand trial" prior to finding that he has waived his Sixth Amendment right to counsel the Third Circuit has already implicitly found Martin competent, though the issue was not directly before it. See United States v. Peppers, 302 F.3d 120, 132 (3d Cir. 2002). There are simply no factual assertions or evidence, aside from Martin's bald assertions of incompetency, that his waiver of his right to representation was defective because he was incompetent.

Accordingly, because Martin underwent a psychiatric evaluation which unambiguously found him competent to represent himself, Martin's claim that the Court erred in finding he was competent to waive his Sixth Amendment right plainly does not provide a basis for relief.[4]

### D. Failure to Disclose Mental Health Examination Resulted in a Brady Violation

Last, Martin's supplemental pleading raises the new issue that the Government's failure to disclose the psychiatric evaluation to the defense constitutes a Brady violation. The Court

---

[4]The Court notes that it stayed final ruling on Martin's request for copies of transcripts and other Court documents pending submission of Martin's supplemental pleading. As stated, the Court finds that Martin's claim is clearly nonmeritorious, thus it denies Martin's request for transcripts pursuant to 28 U.S.C. § 753(f). The Court has assured itself that none of the requested documents support Martin's claim or suggest an alternative, colorable basis for relief.

7

finds that this argument must be dismissed because, even if deemed to relate back, it is meritless.

First the Court examines whether the new claim is sufficiently related to the initial motion. To be considered along with his initial motion, the accusation that the Government committed a Brady violation must arise from the "same conduct, transaction, or occurrence described" in some count of Martin's initial motion. Hodge, 554 F.3d at 378. Martin does proffer in his initial motion that AUSA Kelly was in a conspiracy to violate his rights, however, this general allegation is insufficient to encapsulate the new claim. Despite the numerous allegations of misconduct by AUSA Kelly, there are no allegations that her actions included withholding documents to prevent Martin from having a fair trial. Rather, the allegations of misconduct relate to the indictment and her choice to bring federal charges against him, as well as her relationship with his former defense attorney and state court judges. The failure to reveal important discovery or pretrial documents to the defense is not touched upon. The initial motion also does not allege any pre-trial cover-up which would have indicated misconduct occurring at the same time as the newly-alleged misconduct. Last, the initial motion is also barren of any mention of the incompetency proceedings or the psychiatric evaluation, to which this new allegation might also be said to relate back.

Though a close question given Martin's allegations of general misconduct by AUSA Kelly, the Court finds that Martin's allegation of a Brady violation can only be described as relying on facts "'differ[ent] in both time and type from those the original pleading set forth.'" Hodge, 554 F.3d at 378 (quoting Mayle, 545 U.S. at 650). Thus, the Court finds the new claim does not relate back and is barred by AEDPA.

Even if the Court were to find that Martin's Brady claim relates back to the initial filing, however, the claim would still be dismissed for failure to raise a colorable right to relief.

In Brady v. Maryland, the Supreme Court stated that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process." Brady, 373 U.S. 83, 87 (1963). To constitute a Brady violation, three components must be met: the evidence not disclosed must be favorable to the accused, the evidence must be suppressed by the state, and the accused must incur prejudice. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Martin's claim fails because, assuming the evaluation was suppressed, it does not meet the first or third component of a Brady violation. The results of the mental health examination are not any form of exculpatory or impeachment evidence in this case. Indeed, the evaluation establishes only that Martin was competent to stand trial and to represent himself. It provides no information which tends to exculpate or inculpate Martin for the crime charged, and it certainly would not have provided support for an insanity defense, as Martin suggests. The psychiatrist unequivocally found Martin competent and sane. Thus, even assuming the report was not disclosed to Martin's counsel or to Martin, there is no probability that its disclosure would have affected trial strategy, been admitted at trial for any purpose, or led to a different outcome. United States v. Bagley, 473 U.S. 667, 682 (1985) (finding that a Brady violation does not occur unless there is a "reasonable probability that, . . . had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Accordingly, Martin's supplemental claim that the Government committed a Brady violation by failing to disclose his mental health examination must be dismissed.

### III. CONCLUSION

For the reasons stated in the foregoing memorandum, Martin's supplemental pleading will be accepted as timely filed, but all new claims will be dismissed. The additional facts alleged in support of Martin's conspiracy and unconstitutional indictment claims will be accepted and considered in the Court's forthcoming memorandum and order on Martin's initial § 2255 motion.

An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | Criminal No. 1:CR-03-00360 |
| v. | : | |
| | : | (Chief Judge Kane) |
| SYLVESTER MARTIN, | : | |
| Defendant | : | |
| | : | |

**ORDER**

**AND NOW**, this 6th day of May 2010, upon consideration of Martin's "evidence presented for extension of time in which to file a response to a order to file a rule 15.A amended and supplemental pleading" and "petition for relief from a judgment of conviction and sentence pursuant to F.R.Civ.P.15.A amended and supplemental pleadings" (Doc. No. 297), which the Court construes as a *nunc pro tunc* motion to accept his supplemental pleadings, **IT IS HEREBY ORDERED** that the supplemental pleadings are accepted as timely filed**.**

**IT IS FURTHER ORDERED** that Martin's Brady claim and incompetency claim are **denied**, but that the additional facts alleged in support of his conspiracy, statute of limitations, double jeopardy, and vindictive prosecution claims will be considered in the Court's determination of his § 2255 motion.

A certificate of appealability shall not issue, as all reasonable jurists would agree that Martin is plainly not entitled to relief on the Brady and incompetency claims.

   S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania