IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:CR-03-00360 |
| v. : | |
| : | (Chief Judge Kane) |
| SYLVESTER MARTIN, : | |
| Defendant : | |
| : | |

**MEMORANDUM**

Before the Court is Defendant Sylvester Martin's motion for relief pursuant to 28 U.S.C. § 2255 and the supplemental pleadings the Court has allowed to proceed. (Doc. Nos. 286, 297, 298.) For the reasons that follow, the motion will be denied.

**I.     BACKGROUND**

On August 30, 1998, Harrisburg City Police were summoned to the 2200 block of Jefferson Street, Harrisburg, in response to a report that shots had been fired. Sylvester Martin, identified by neighbors as having fired the shots, was arrested and charged with reckless endangerment, false reports to law enforcement authorities, disorderly conduct, public drunkenness, and firing a weapon within city limits. Martin failed to appear for his arraignment on March 26, 1999. A capias was issued for his arrest and his name was entered into the National Crime Information Center ("NCIC").

On October 31, 2000, Martin was arrested in Virginia but was released on bail, and the charges were eventually dismissed. Martin was not extradited back to Pennsylvania, though the capias for his arrest remained outstanding.

Martin was again arrested in Virginia on October 20, 2002. On January 21, 2003, Martin was extradited back to the Commonwealth of Pennsylvania. On May 15, 2003, a jury trial began

on the outstanding charges against Martin in Pennsylvania. During the course of the trial, the jury inadvertently viewed Martin in handcuffs, and a mistrial was declared. The re-trial was continued several times, until November 10, 2003, when the state charges were *nol prossed* so that Martin's case could be referred to federal authorities pursuant to "Project Safe Neighborhoods," a federally-funded program designed to identify state cases appropriate for federal prosecution. The attorney trying Martin's case in Dauphin County, Kimberly Kelly, was cross-designated as a Special Assistant United States Attorney ("SAUSA"), and proceeded to try Martin's case in federal court.

On December 10, 2003, a federal indictment was returned, charging Martin with knowingly possessing a firearm as a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Attorney James West was appointed to represent Martin. On January 13, 2004, West filed pretrial motions to dismiss. The motions argued that the case should be dismissed based on the statute of limitations, due process violations, vindictive prosecution, and an unlawful search. (Doc. Nos. 22, 24.) After hearings, the motions were denied. (Doc. Nos. 56, 86.) Before the motions were even ruled upon, however, Attorney West moved to withdraw his representation, citing extreme lack of cooperation from Martin.

On June 3, 2005, after Martin had incurred irreconcilable differences with two additional appointed attorneys and made his first request to proceed *pro se*, the Court ordered a psychiatric evaluation. (Doc. No. 103.) Martin strongly contested the order that he undergo a psychiatric evaluation. (Doc. Nos. 113, 138, 147.) The Court persisted in requiring Martin to be evaluated on the basis that he had expressed a desire to represent himself, and he must be deemed competent before the Court could find a valid waiver of his Sixth Amendment right to counsel.

2

Martin eventually complied with the request, and the court-ordered psychiatrist rendered an opinion that Martin was competent to stand trial and to represent himself. Martin's first request to proceed *pro se* was, however, deemed withdrawn. Martin subsequently received, and found inadequate, the next two defense attorneys appointed to represent him.

On October 28, 2005, Martin renewed his motion to proceed *pro se*, citing difficulties with his fourth appointed defense attorney. (Doc. Nos. 171, 224.) A hearing was held, during which Martin again withdrew his motion to proceed *pro se*. The Court stayed the trial date sixty days to enable Martin to retain the attorney of his choosing, Royce Morris. (Doc. No. 176.) When Martin could not afford Morris's services, the Court made special arrangements to appoint Morris to represent Martin. (Doc. No. 186.) While representing Martin, Morris filed a new motion to dismiss Martin's indictment, this time arguing that the indictment violated the Double Jeopardy Clause. (Doc. Nos. 217, 218.) The motion was denied. (Doc. No. 222.)

On March 17, 2006, three days prior to trial, the Court received a letter from Martin dated March 15, 2006, raising several issues "for the Court to address," though he was still represented by Morris. (Doc. No. 223.) Among other things, the letter urged the Court to further postpone the trial because Morris was not adequately representing Martin. (Doc. No. 223.) On March 17, 2006, the Court held a hearing to discuss Martin's options with him. (Doc. No. 224.) At the hearing, Morris represented to the Court that he was prepared for trial the following week and was willing to proceed. Finding no reason to stay the trial or to release competent counsel from representation at such a late date, the Court denied Martin's request to stay the trial, giving Martin the option to allow Morris to represent him at trial or to represent himself *pro se* with Morris acting as standby counsel. (Doc. No. 224.) Martin chose to represent himself, and the

3

Court found that he waived his Sixth Amendment right to counsel. All told, Martin incurred irreconcilable differences with five individual attorneys prior to trial, including Morris, whom he had specifically requested.

Trial began March 20, 2006, with Martin representing himself and Morris acting as standby counsel. (Doc. Nos. 224, 236.) On March 22, 2006, the jury returned a verdict of guilty against Martin. (Doc. No. 233.) Martin appealed, alleging that the indictment violated the statute of limitations and that his Sixth Amendment right to counsel was violated. The appeal was denied. (Doc. No. 279-2.)

On June 2, 2009, Martin filed a motion to vacate pursuant to 28 U.S.C. § 2255, which he has supplemented and which has been fully briefed. (Doc. Nos. 292, 297.) The motion raises several challenges to the indictment but focuses almost entirely on allegations of a vast conspiracy against him. Martin repeatedly asserts that nearly everyone involved in the judicial proceedings, including the state and federal judges involved in the case, the state and federal prosecutors, and his state and federal defense attorneys, colluded to violate his rights.[1] Though difficult to classify, the Court will favorably interpret Martin's challenges as ineffective assistance of counsel claims.

## II. DISCUSSION

Martin alleges that his attorneys were ineffective for failing to raise the following issues prior to trial, on appeal, or both: his lack of representation at the grand jury proceedings;

---

[1] Martin has raised and re-raised his allegations of conspiracy at nearly every available opportunity throughout his federal proceedings, including through letters to the Court, motions for recusal, and a complaint of judicial misconduct. All allegations of misconduct have been unsupported by evidence and denied as frivolous upon review.

expiration of the statute of limitations; violation of the Double Jeopardy Clause; vindictive prosecution; violation of the Fifth Amendment; his self-representation; faulty jury instructions; and disruption of his ability to cross-examine witnesses, and lack of venue and jurisdiction.

To state a claim for ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, which is to say that it "fell below an objective standard of reasonableness," and that he was prejudiced by his counsel's deficient performance. Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). There is a "strong presumption" that counsel acted reasonably, and "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. Moreover, counsel does not have an obligation to raise every claim his client suggests; counsel cannot be deemed ineffective for failing to raise a meritless claim. Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998). To prevail on an ineffective assistance claim, the defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Outten, 464 F.3d at 414.

**A. Grand Jury Proceedings**

First, Martin suggests that counsel was ineffective for failing to object to the indictment on the basis that the grand jury proceedings were sealed and he was not represented at them. This argument is frivolous. Martin does not have a right to be present or to be represented at grand jury proceedings. See Fed. R. Crim. P. 6(d). Grand jury proceedings are generally sealed and confidential, and indictments may be ordered sealed until a defendant is in custody. See Fed. R. Crim P. 6(e). Martin has raised no facts to indicate that the grand jury proceedings were

improper or that the indictment was not supported by probable cause. This argument is meritless, thus counsel cannot be deemed ineffective for failing to raise it prior to trial or on direct appeal. Parrish, 150 F.3d at 328.

**B. Statute of Limitations**

Martin next challenges the indictment as barred by the statute of limitations. To the extent he intends to argue that counsel was ineffective for failing to challenge the indictment on statute of limitations grounds, this claim will be denied. The limitations issue was adequately raised, well-argued, and properly denied by the Court prior to trial and by the Third Circuit Court of Appeals on direct appeal. (Doc. Nos. 22, 56, 279-2.) The Third Circuit affirmed this Court's ruling that the statute of limitations did not apply to Martin because he was a fugitive from justice for a portion of time between the crime and the indictment. (Doc. No. 279-2 at 3-5.)

Martin presents no new argument or evidence to suggest counsel inadequately raised the statute of limitations issue or that it was wrongly decided. Nor does Martin contest the finding that he was a fugitive. Accordingly, the issue has been raised and litigated; the Court will not reconsider it at this point. United States v. Orejuela, 639 F.2d 1055 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255.").

**C. Double Jeopardy**

Martin next asserts that counsel was ineffective for failing to argue that the federal proceedings resulted in double jeopardy. The Court notes that the double jeopardy issue was raised prior to trial, but it was not reiterated on appeal. Appellate counsel cannot be found

6

ineffective for failing to raise this issue, however, because Martin has not provided any evidence to suggest that the claim, found "frivolous and lack[ing] any legal merit" when initially raised, would have succeeded on appeal. (Doc. No. 222.) Martin offers no basis which would lead the Court to find that an appeal of the double jeopardy claim would have been similarly devoid of merit. Therefore, Martin's ineffectiveness claim for failure to argue a double jeopardy violation on appeal will be dismissed.

### D. Vindictive Prosecution

Martin argues that appellate counsel was ineffective for failing to argue another issue raised prior to trial but not reiterated on appeal: the vindictive prosecution claim. Although Martin's supplemental pleading appears to include more detailed allegations as to the vindictive prosecution claim in that he details the alleged conspiracy between his state defense attorney, SAUSA Kelly, the state court judges, federal judges, and all five of his defense attorneys appointed by this Court, the frivolity of these assertions precludes their accreditation. See Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001) ("[A] defendant would not be entitled to a hearing if his allegations were contradicted conclusively by the record, or if the allegations were patently frivolous."). Discarding the unfounded and nearly incomprehensible claims of conspiracy, the facts Martin alleges in favor of a finding of vindictive prosecution by SAUSA Kelly are the same as those revealed at the pretrial hearing.

To prevail on a vindictive prosecution claim, Martin must produce evidence sufficient to support a presumption that SAUSA Kelly engaged in vindictive prosecution, or evidence that actually demonstrates vindictiveness. See United States v. Paramo, 998 F.2d 1212, 1220 (3d Cir. 1993); (Doc. No. 86 at 7-8.) Martin has done neither. Though Kelly was prosecutor during

7

Martin's state court proceedings and played a part in the referral of his case to federal authorities through the Project Safe Neighborhoods program, the Court found that this connection alone was insufficient to create the presumption of vindictiveness when the decision to bring the federal charges was not Kelly's alone. Indeed, Martin has produced no new evidence to support an inference of prosecutorial vindictiveness. He also presents no evidence of actual vindictiveness. Because he has not provided any evidence to suggest that the vindictive prosecution claim would have been successful on appeal, appellate counsel will not be deemed ineffective for failing to argue the vindictive prosecution claim on appeal.

Moreover, appellate counsel has no obligation to raise all issues requested by Martin. "The Supreme Court has repeatedly admonished that appellate counsel need not, and should not, raise every non-frivolous claim, but rather may select from them in order to maximize the likelihood of success on appeal." Johnson v. Tennis, 549 F.3d 296, 302 (3d Cir. 2008). In this case, appellate counsel exercised his discretion by appealing two major issues in the case: Martin's waiver of his Sixth Amendment right to counsel and the statute of limitations issue. Though Martin's frequent filing with this Court indicates his disagreement with the proposition that "an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that 'there is no merit to any of them,'" such an exercise of discretion is, nonetheless, within the bounds of reasonable representation. Id. (Internal citation omitted.) Appellate counsel was not ineffective for failing to argue the vindictive prosecution claim on appeal.

**E. Speedy Trial Issue**

As with the prior arguments, Martin contends that appellate counsel was ineffective for failing to appeal the speedy trial claim that was raised and denied prior to trial.[2]

The Supreme Court has held that pre-indictment delay may violate a defendant's Fifth Amendment right to due process where the delay "cause[s] substantial prejudice to [the defendant's] rights to a fair trial and [is] an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307 (1971). To prevail on such a claim, the defendant must prove that "the government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." United States v. Sebetich, 776 F.2d 412, 430 (3d Cir. 1985).

The pre-trial motion alleging a Fifth Amendment violation for pre-indictment delay was denied because Martin failed to present evidence that the delay was caused in order to gain a tactical advantage over him and that the delay caused him actual prejudice. (Doc. No. 56 at 7.) Though Martin spends numerous pages of his § 2255 motion detailing the alleged conspiracy perpetrated against him by the state court judges, public defenders, federal defense attorneys, the undersigned, and SAUSA Kelly, he fails to present any new, non-frivolous evidence to create even a question of fact that the five-year delay between the crime and federal indictment was designed to gain a tactical advantage over him. He also does not indicate how the delay prejudiced him or his defense. Indeed, during that five-year period, Martin was a fugitive from justice for up to three years, and was being prosecuted on state court charges for at least another

---

[2]The Court notes that speedy trial claims may be brought for either pre- or post-indictment delay under the Fifth or Sixth Amendment, respectively. The only colorable claim on these facts, however, is a Fifth Amendment claim for pre-indictment delay because post-indictment delay was almost exclusively caused by Martin's failure to cooperate with counsel.

9

eleven months prior to initiation of the federal indictment. Though Martin generally contends that all proceedings against him are the product of a vast conspiracy, he presents no evidence regarding either element of his Fifth Amendment speedy trial claim. With no indication of how the pre-indictment delay occurred to gain a tactical advantage in the proceedings or that it actually caused Martin prejudice, the Court cannot find that the appeal would have been successful or that appellate counsel was ineffective for failing to argue the issue. This claim will be dismissed.

### F. Waiver of Sixth Amendment Right to Counsel

The Court interprets Martin's argument regarding his waiver of his right to counsel to be that appellate counsel was ineffective, though he raised the issue, because he did not raise what Martin believes to be the strongest arguments: conspiracy and judicial misconduct. In appealing Martin's waiver of counsel, appellate counsel argued that Martin did not knowingly and voluntarily waive his right to representation, but he did not suggest that the Court compelled Martin to proceed *pro se* to further a nefarious agreement to deprive Martin of his constitutional rights.

Martin asserts that Judge Cherry, Judge of the Court of Common Pleas of Dauphin County; Attorney Daniels and Attorney Weisenberger, public defenders at his state court proceedings; Kelly; the five defense attorneys appointed during his federal proceedings; and the undersigned, colluded to ensure that he would not receive his fundamental rights, be found guilty, and receive jail time. Not only are these facts patently frivolous and thus appellate counsel had no obligation to raise them, but the cogent argument appellate counsel did make before the Third Circuit amounted to effective assistance. It was well within reasonable appellate

strategy for counsel to confine his arguments to colorable legal claims rather than unsubstantiated assertions. Despite appellate counsel's arguments, the Third Circuit Court of Appeals clearly held that Martin waived, if not forfeited, his right to counsel at his federal trial. (Doc. No. 279-2 at 5-8 & n.2.)

Because Martin raises no colorable claim that his decision to represent himself at trial was unknowing or involuntary, or that an alternative appellate strategy urging the Third Circuit Court of Appeals to find that a vast conspiracy occurred would have been successful, appellate counsel cannot be found ineffective. This claim will be denied.

**G. Trial Errors**

Martin next argues that counsel was ineffective for failing to challenge the jury instruction requiring the Government to prove only constructive possession of the firearm rather than actual possession. Martin also argues that the Court prevented him from cross-examining witnesses and did not provide cautionary instructions when witnesses called out that he was guilty. The Court notes that Martin, in charge of his own defense at the time, did not raise or preserve these issues at trial, thus they would have incurred, at best, plain error review on appeal. See Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 339 (3d Cir. 2005) ("Where a party fails to object properly, we may review for 'plain error in the instructions affecting substantial rights.'" (citing Fed.R. Civ. P. 51(d)(2))); United States v. Johnstone, 107 F.3d 200, 204 n.4 (3d Cir. 1997) ("Where a party has not made a clear, specific objection to the charge that he alleges is erroneous at trial, he waives the issue on appeal unless the error was so fundamental and highly prejudicial as to constitute plain error." (internal citations omitted)); Gov't of Virgin Islands v. Williams, 892 F.2d 305, 309 (3d Cir. 1989) (under contemporaneous

11

objection rule, a party must object contemporaneously "to any matter believed to be erroneous" or the matter will be waived for purposes of appeal). Even if appellate counsel could be faulted for failing to assert the unpreserved claims on appeal, Martin has not stated a claim that any trial error occurred, so the claim must be denied.

Title 18 U.S.C. § 922(g) states that "it shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. 922(g). Possession in this statute includes constructive possession. See United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008) ("The jury could convict [the defendant] of the possession charges if it concluded that he actually or constructively possessed . . . the Taurus [firearm]."). The Court properly instructed the jury that constructive possession may be proved absent physical custody of the object, so long as the individual "has the ability to exercise substantial control over" the firearm or ammunition. (Doc. No. 238 at 33.) Accordingly, the instruction given is an accurate statement of the law; no error occurred and counsel was not ineffective for failing to so argue. See Iglesias, 535 F.3d at 156.

Martin also asserts that he was denied an opportunity to cross examine certain witnesses at trial, and witnesses prejudicially "out burst [sic] stating you know yiu [sic] did it." (Doc. No. 286 at 12.) Both assertions are plainly contradicted by the record and will be dismissed. (See Doc. Nos. 236-238.) Accordingly, all allegations related to trial error will be dismissed.

**H. Other Issues**

Martin's motion also includes passing reference to allegations that the Court lacks venue and jurisdiction because charges were initially brought in state court, that he was "convicted" of

fleeing from justice pursuant to 18 U.S.C. § 3290 without a trial, that his sentence is cruel and unusual punishment, and that Virginia's "Ex Post Facto Law forbid thr [sic] Government to use a prior conviction after the enactment of a new statute." (Doc. No. 286 at 11.) None of these arguments warrant significant attention.

Briefly stated, the Court has jurisdiction over "offenses against the law of the United States," 18 U.S.C. § 3231, and the indictment alleged that Martin committed an offense under 18 U.S.C. § 922(g)(1), 924(a), and 924(e) within this district. Martin was never charged with a federal crime under 18 U.S.C. § 3290, the statute precluding application of the statute of limitations to fugitives. Thus, jurisdiction and venue were proper and Martin was not denied a right to trial. Last, the Court applied the federal sentencing guidelines to Martin, properly considered his past convictions, and sentenced him within the guideline range. His sentence does not violate the Constitution or any state law. All of Martin's arguments to the contrary are frivolous, if not incomprehensible, and will be denied without further consideration.

## I. Certificate of Appealability

As required by Rule 11 of the Rules Governing Section 2255 proceedings, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To merit the issuance of a certificate of appealability, the defendant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As stated above, Martin has not shown that he was prejudiced by any of defense or appellate counsel's alleged inadequacies, and he has not raised any colorable claim to relief. Accordingly, reasonable jurists would agree that he has not made a showing of the denial of a constitutional right. There exists no basis for a certificate of appealability with respect to this motion.

## III. CONCLUSION

For the reasons stated above, the Court finds that Martin's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 must be dismissed without an evidentiary hearing. A certificate of appealability shall not issue. An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:CR-03-00360 |
| v. : | |
| : | (Chief Judge Kane) |
| SYLVESTER MARTIN, : | |
| Defendant : | |
| : | |

## **ORDER**

**AND NOW**, this 16th day of June 2010, upon consideration of Defendant Martin's motion to vacate sentence pursuant to 28 U.S.C. § 2255 and supplemental pleadings (Doc. Nos. 286, 297), **IT IS HEREBY ORDERED** that the motion is **DENIED.** A certificate of appealability shall not issue.

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania